**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Gary Dewayne Johnson

      v.                           Civil No. 07-cv-161-PB

Angela Poulin, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Gary Johnson has filed a civil rights
action, pursuant to 42 U.S.C. § 1983, challenging a number of the
conditions of his confinement.  He now brings two motions seeking
preliminary injunctive relief (document nos. 16, 17 & 38).
Johnson particularly seeks to enjoin the alleged deprivation of
hygiene items and access to the library by defendants.  A hearing
on the first motion for injunctive relief was held before me on
October 4, 2007.  I directed the parties to file affidavits of
fact supporting their positions on the second motion for
injunctive relief so that I might, if possible, decide the second
motion in conjunction with the first, and without an additional
hearing.  The parties have complied with that request (document
nos. 40 & 46) and have provided sufficient information to enable
me to resolve the pending motions.  For the reasons explained

herein, I recommend that the plaintiff's requests for preliminary injunctive relief be denied.

<u>Background</u>

1.   <u>Facts Concerning Johnson's Use of the Law Library</u>

Based on the evidence presented at the October 4, 2007, evidentiary hearing and alleged in the parties' affidavits (document nos. 40 & 46), I find the facts as follows.  On March 6, 2007, Johnson was in the law library conducting legal research to support a challenge to his criminal conviction.  As part of that search, he entered the term "licked her anus" into LexisNexis ("Lexis"), the New Hampshire State Prison Northern New Hampshire Correctional Facility ("NCF") law library's computerized legal research system.  At that time, an inmate employed in the law library warned Johnson that his Lexis research was subject to being monitored by library staff, and that he should not conduct his current search as it contained inappropriate terminology.  NCF library supervisor Angela Poulin ("Poulin") testified that monitoring of inmate research by library staff is done to prevent and/or identify improper usage of Lexis, as the Lexis search terms entered can be seen by other

inmates and can, therefore, be used by inmates to communicate
with one another.

While Johnson was logged into the Lexis system on March 6,
2007, an unidentified inmate in the law library was conducting
searches under the name of inmate Darren Starr, who was not in
the library at this time.  These "Starr searches" were very
sexually explicit and did not appear to have been appropriate to
any legitimate research that was occurring.  Although Poulin
cannot definitively identify who conducted the Starr searches,
and readily admitted at the hearing that it could have been any
one of a number of inmates, Poulin believed that it was Johnson
who conducted those searches.

Several days later, Johnson returned to the law library.  At
that time, Johnson logged into the Lexis system and searched for
the term "masturbated a bull" in order to find a specific New
Hampshire case that contained that phrase, and that was relevant
to the challenge to his criminal case.  After that incident,
Poulin spoke to Johnson's unit manager, Robert Thyng, and advised
him of Johnson's searches and her concerns regarding the Starr
searches.  In response, Thyng recommended that Poulin charge
Johnson with disciplinary infractions for the two searches in his

own name, which she did.  Johnson went to a disciplinary hearing,
was found guilty, and was given a number of sanctions by the
hearing officer.

In addition to the disciplinary sanctions, Thyng banned
Johnson from the NCF recreational and law libraries for a period
of thirty days.  Because Johnson had legal matters pending, Thyng
advised Johnson that he would be allowed to request specific
cases or documents from the library by submitting an inmate
request slip.  Feeling that this was insufficient to meet his
research needs, Johnson requested that a person trained in the
law be appointed to conduct research on Johnson's behalf.  Thyng
denied the request.  Poulin, however, testified that, in the
event Johnson is again banned from the library, he can make a
general research request in addition to requests for specific
documents, and that research would be conducted on his behalf.
It appears that this information was not actually communicated to
Johnson prior to Poulin's testimony at the October 4 hearing.

Johnson's right to use the library was reinstated on or
about May 20, 2007.  On May 23, 2007, Johnson went to the library
to have Poulin copy documents for him.  Although she has a
twenty-four hour window in which to complete a copy request, and

Johnson's request was lengthy, Poulin agreed to copy the documents right away.  Johnson stood outside of Poulin's office waiting for his copies while she worked.  Poulin at first suggested, and then requested, that Johnson have a seat while she completed the work.  Poulin testified that instead of complying with that request, Johnson stood at her office door in an antagonistic and intimidating manner.  As she felt threatened by Johnson, Poulin asked a correctional officer to remove Johnson from the library.  Johnson was subjected to disciplinary action for the incident.  Thyng again banned Johnson from the NCF libraries, this time for a period of ninety days, and threatened to ban him indefinitely for any further infraction.  Johnson's right to access the library was reinstated in August 2007, and he has not since been banned from the library.[1]

Johnson claims that in August 2007, a new policy for making law library appointments was instituted which was designed specifically to deny him access to the law library.  The evidence, however, demonstrated that the policy was posted in August 2007, at various locations around the prison and applied

---

[1]Although Johnson was provided with law library times in August and September, he was not able to utilize all of the time because he had eye surgery.

5

immediately to all inmates.  The new policy continued the practice of requiring inmates to fill out inmate request slips to request library time, which the librarian responds to by granting inmates specific appointments.  The August 2007 policy adds an additional step, however, that requires the inmate to sign the inmate request slip after the librarian responds to acknowledge the appointment.  Then, the pink "staff" copy of the inmate request slip is returned to the librarian with the inmate's signature, which confirms the appointment.  According to the policy, the appointment is voided if the staff copy of the request is not returned to the library signed by the inmate.

Poulin asserts, by affidavit, that the policy is intended to prevent scheduling difficulties and misunderstandings in the prison law library.  The evidence showed that on October 17, 2007, and October 26, 2007, Johnson requested regular and extended law library time for the month of November by submitting request slips.  Although Johnson followed the new procedure and returned the staff slip for the extended hours request, he failed to return the staff copy of his form for the regular library hours appointment.  As a result, his regular hours were cancelled but his extended hours were not.  Poulin sent Johnson a memo

advising him of two ways in which he could have his November hours reinstated.  Johnson did not seek to have that time reinstated.  No evidence, aside from Johnson's bald assertion, was presented to show that this policy was created by Poulin in November and applied only to Johnson in retaliation for his pending lawsuit against her.[2]

2.   <u>Facts Concerning Hygiene Items</u>

The evidence at the hearing showed that during the summer of 2007, Johnson, at various times, was without one or more of the toiletries he believed that he needed to maintain proper hygiene, and that he was unable to afford to buy these items himself at the canteen.  Johnson testified that he made a number of requests for free items from the prison, and that he was sporadically supplied with some hygiene supplies and was deprived of other necessary items for longer than was reasonable.  The evidence at the hearing demonstrated that he was not consistently provided

---

[2]I note that on November 7, 2007, Poulin charged Johnson with a disciplinary infraction for failing to attend or cancel his "scheduled" regular law library appointment on that date.  I find it curious that Johnson would be disciplined for failing to come to an appointment that, per the policy, had not been confirmed, and had, therefore, been voided.  This incident alone, however, is insufficient to demonstrate that the policy itself is unreasonable or was created as a retaliatory measure to punish Johnson for pursuing legal action against Poulin.

with a complete set of toiletries during that time period, but that he did receive small amounts of toiletries without charge in response to several of his requests.

Johnson also testified that, by the time of the hearing, his financial situation had improved, and that he had all of the hygiene items he needed and the ability to purchase more should the need arise.  Johnson did not present any evidence to indicate that he was likely to be unable to purchase the items for himself in the foreseeable future.

Discussion

1.   <u>Standard of Review</u>

Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of the underlying action.  <u>See</u> <u>Jean v. Mass. State Police</u>, 492 F.3d 24, 26–27 (1st Cir. 2007).  Such a situation arises when some harm from the challenged conduct could not be adequately redressed with traditional legal or equitable remedies following a trial.  <u>See</u> <u>Ross–Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); <u>see also</u> <u>Acierno v. New Castle County,</u>

40 F.3d 645, 653 (3d Cir. 1994) (explaining irreparable harm and its effect on the contours of preliminary injunctive relief). Absent irreparable harm, there is no need for a preliminary injunction.  The need to prevent irreparable harm, however, exists only to enable the court to render a meaningful disposition on the underlying dispute.  See CMM Cable Rep., Inc. v. Ocean Coast Props., 48 F.3d 618, 620–21 (1st Cir. 1995) (explaining the purpose of enjoining certain conduct as being to "preserve the 'status quo' . . . to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs."); see also Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978) ("The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

A preliminary injunction cannot issue unless the moving party satisfies four factors which establish its need for such relief.  See Esso Std. Oil Co. v. Monroig–Zavas, 445 F.3d 13, 17–18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); see also Ross–Simons, 102 F.3d at 18–19 (explaining the burden of proof for a preliminary injunction).

9

Those factors are:  "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  Esso Std. Oil, 445 F.3d at 18.  If the plaintiff is not able to show a likelihood of success on the merits, the remaining factors "become matters of idle curiosity," insufficient to carry the weight of this extraordinary relief on their own.  See id. (the "sine qua non of the four-part inquiry is likelihood of success on the merits").  Yet, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."  Ross-Simons, 102 F.3d at 19.

    Johnson is incarcerated at NCF, where he claims he has been denied: (1) access the courts, (2) adequate hygiene items, (3) adequate protection while in prison, (4) due process prior to being banned from the library, (5) adequate mental health care, (6) and that he has been subject to defamation.[3]  His motions for

_____

    [3]Johnson initially asserted several more claims which, however, were dismissed following the statutorily mandated preliminary review of prisoner complaints.  See 28 U.S.C. § 1915A.

preliminary injunction are based only on the claims regarding the alleged deprivation of hygiene items, improper monitoring of research, and inadequate access to the law libraries, legal research, and the courts.  He now seeks: (1) retroactive pay in the amount of $400, (2) the provision of free necessary hygiene items, (3) the reinstatement of a cell feed pass, (4) an order to stop the monitoring of his legal research, (5) adequate access to the law library or other means by which he can conduct necessary legal research, and (6) the rescission of the August 2007 policy for making law library appointments.  Applying the standard as set out above, I consider each of these bases for injunctive relief.

2.   <u>Retroactive Pay and Cell Feed Pass</u>

The claim underlying the request for retroactive pay was dismissed on December 10, 2007, and, therefore, cannot support the requested injunctive relief.  Accordingly, it will not be considered the claim further.

At the hearing, Johnson withdrew his request for reinstatement of his cell feed pass.  I will not, therefore, consider this claim any further as a basis for the preliminary injunction now sought.

11

3.   <u>Denial of Hygiene Items</u>

    a.   <u>Likelihood of Success on the Merits</u>

    Prison officials have an obligation to provide Johnson with humane conditions of confinement, including "the minimal civilized measure of life's necessities."  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).  This Court has previously held that "[s]anitary living conditions and personal hygiene are among the necessities of life protected by the Eighth Amendment."  <u>See</u> <u>Kenyon v. Cheshire County Jail Adm'r</u>, No. Civ. 92-515-M, 1994 WL 529925, *3 (D.N.H. 1994) (citations omitted).  Such a deprivation, however, must be "sufficiently grave" to violate the Eighth Amendment and, therefore, be actionable under § 1983.  <u>See</u> <u>Wilson</u>, 501 U.S. at 298.  Here, the evidence showed that Johnson was subjected to a temporary and partial denial of hygiene items, but that the prison was not unresponsive to his hygiene needs. Johnson did not meet his burden of proving that the deprivation of hygiene items was serious enough to warrant a finding that the prison's failure to provide all of the requested toiletries constituted cruel and unusual punishment.  Accordingly, I find

that Johnson failed to demonstrate that he is likely to succeed
on the merits of his Eighth Amendment claim.

      b.   <u>Irreparable Harm</u>

      Further, even if Johnson had demonstrated that he was likely
to succeed on the merits of his claim for a deprivation of
hygiene items, he failed to demonstrate that he would suffer
irreparable harm absent an injunction.  Johnson testified that he
presently has sufficient hygiene items to meet his needs, and he
is currently able to purchase sufficient hygiene items from the
prison canteen.  I therefore recommend that the request for an
injunction ordering the prison to provide Johnson with hygiene
items be denied.

4.   <u>Denial of Access to the Courts</u>

      a.   <u>Denial of Access to Legal Research</u>

           I.   <u>Likelihood of Success on the Merits</u>

      The prison is required to provide Johnson with meaningful
access to legal research materials; they may do so by providing
him with direct access to the library or providing him with the
assistance of a person trained to conduct legal research.  <u>See</u>
<u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977) ( The right of access
"requires prison authorities to assist inmates in the preparation

13

and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); see also Lewis v. Casey, 518 U.S. 343, 350-51 (1996); Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986). The evidence at the hearing showed that during the times he was banned from the library, Johnson was not given the opportunity to conduct general legal research, because he was only told that he could obtain specific documents and cases.  This evidence is sufficient to show that, if any of his pending legal matters were prejudiced by this deprivation, he is likely to succeed on the merits of that claim.

ii.  Irreparable Harm

The evidence at the hearing showed that Johnson currently has access to the NCF law library, and there does not appear to be any impending threat that he will again be banned from the library, absent an infraction of rules on his part.  Should a ban on Johnson's use of the library be imposed in the future, however, the Court relies on Poulin's testimony that generalized legal research is available to inmates who are not permitted in the library.  This is sufficient to remove any lingering need for an injunction by this Court against such a ban as the evidence

14

shows that any future bans on his access to the library will not result in a denial of his right to access the courts. Accordingly, I recommend that Johnson's request to be reinstated to the law library, as well as his request not to be banned from the library in the future, be denied as unnecessary to protect him from irreparable harm.[4]

b.  <u>Monitoring of Legal Research</u>

Johnson claims that Poulin, as well as an inmate employee of the law library, have been monitoring his legal research.  At the hearing, Johnson asserted a general right not to have his legal "work product" monitored.  Johnson claims that this right is particularly acute here, where Poulin is a defendant in Johnson's pending legal action.  Absent a showing, however, that he was actually prejudiced in the prosecution of his civil action, I cannot find that such a right exists.  <u>Lewis</u>, 518 U.S. at 351. Johnson has made no such showing; he did not demonstrate that he was inhibited in pursuing a particular legal action or otherwise harmed simply because his work was subject to monitoring.  To the extent that Johnson alleged that he was limited from conducting a

---

[4]During the hearing, I orally denied Johnson's request for twenty hours a week of library time as being without a constitutional basis.

particular search, he did not contend that the limitation had
actually resulted in prejudice to a civil case.  In fact, Poulin
testified at the hearing that inmates with legitimate research
projects can research terms that might otherwise be
objectionable, but that those inmates should first notify her of
their intention to search those terms if they are unable to use
alternative language to conduct searches.  Johnson did not
attempt alternative means of searching for his information, and
did not discuss the reasons for his searches with Poulin or any
other prison official prior to entering the search terms into the
computerized research system.  Further, Poulin testified that
while legal searches can be monitored, and are monitored to
prevent certain institutional problems, Poulin also testified
that she does not make a frequent practice of monitoring inmate
research, because her other responsibilities do not leave her
enough time to regularly conduct such monitoring.

I find, therefore, that Johnson failed to demonstrate that
he was likely to succeed on his underlying claim that his legal
research was being improperly monitored.  To the extent Johnson's
civil rights action challenges the validity of the regulation
permitting monitoring of legal work, I find that Johnson has

16

failed to demonstrate that the policy was unreasonable or otherwise deprived him of his right to access the courts.  To the contrary, I find that the evidence at the hearing showed that the policy was reasonable, as it was directly related to a legitimate interest of the prison in institutional security, and does not unduly hamper legitimate legal research.  Since Johnson is unlikely to succeed on this claim, I recommend that Johnson's request for injunctive relief to prevent monitoring of Lexis searches be denied.

<u>Conclusion</u>

For all the reasons stated herein, I recommend that both of Johnson's requests for preliminary injunctive relief (document nos. 16, 17 & 38) be denied.  Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14

(1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6

(1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:     January 15, 2008

cc:       Gary Dewayne Johnson, pro se
          Danielle Leah Pacik, Esq.

18