**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Gary DeWayne Johnson**

    **v.**                     Civil No. 07-cv-161-PB
                                 Opinion No. 2008 DNH 086

**Angela Poulin, et al.**[1]

**MEMORANDUM AND ORDER**

    Plaintiff, Gary DeWayne Johnson, an inmate at Northern New Hampshire Correctional Facility ("NCF"), brings a civil rights action pursuant to 42 U.S.C. § 1983 against various NCF prison officials.  Johnson asserts violations of the Eighth and Fourteenth Amendment and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  Defendants have moved for summary judgment on all of Johnson's claims.  For the reasons discussed below, I grant defendants' motion in part and deny it in part.[2]

---

[1] Johnson names the following defendants:  NCF Media Generalist (Law Librarian) Angela Poulin, NCF Unit Manager Robert Thyng, NCF Maintenance Supervisor Joseph Bachofer, NCF Major Dennis Cox, NCF Warden Larry Blaisdell, New Hampshire Department of Corrections ("NHDOC") Commissioner William Wrenn, NHDOC employee Christopher Kench, NCF Sergeant David Wilson, and NCF Corporal Shane Mailhot.

[2] Johnson stated in his response to defendants' cross-motion for summary judgment (Doc. No. 65) that he wished to withdraw his

## I.   BACKGROUND

### A.   Law Library Incidents

Johnson is incarcerated as a result of sexual assaults
involving a minor under thirteen years of age. At NCF, each time
prisoners come to use the law library they are asked to sign an
agreement stating, with respect to computer use:  "Use of
inappropriate terminology or terms is strictly forbidden and
violators will be asked to leave at that time and will be subject
to disciplinary action . . . [b]y signing below, the inmate
agrees to adhere to all policies listed above and any facility
rules, guidelines, and regulations along with common sense and
decency."

On March 6, 2007, Johnson visited the NCF law library and
entered the search terms "licked her anus" into the LexisNexis
search engine on a law library computer.  A law library clerk
reported this search to the law librarian, Angela Poulin, who
charged Jackson with a disciplinary infraction for performing a
search using inappropriate terminology.  Johnson argues that he

---

motion for summary judgment (Doc. No. 56).  In defendants' reply
to Johnson's objection (Doc. No. 67), the defendants assented to
withdrawal of plaintiff's motion.  Therefore, I address only
defendants' motion for summary judgment (Doc. No. 62).

ran this search because his conviction related to penetration of
the victim's vagina with his tongue.  On March 12, 2007, Johnson
searched for the term "masturbated a bull."  Johnson argues that
he searched for this term because another inmate had told him
that there was a case involving that term that dealt with the New
Hampshire rape-shield statute, an issue relevant to Johnson's
conviction.[3]  Johnson was again charged with a disciplinary
infraction.  Unit Supervisor Robert Thyng suspended Johnson from
the law library for thirty days pending disciplinary hearings for
the March 6 and March 12 incidents.

Johnson grieved this pre-hearing ban of law library access
to NCF Warden Larry Blaisdell and NHDOC Commissioner William
Wrenn.  Wrenn and NHDOC employee Christopher Kench, acting for
Wrenn, upheld the denial of access.  On March 14, 2007, Sergeant
David Wilson, an NCF official, did not allow Johnson to go to the
law library to have documents copied at the library.

On March 21, 2007, a disciplinary hearing was held, and
Johnson was found guilty of the disciplinary infractions.  He was
sanctioned with five days of punitive segregation and a ninety-

---

[3] The case is State v. Howard, 121 N.H. 53 (1981).

day suspension, a fifteen-day loss of recreation time, a ten-day loss of canteen privileges, and fifteen hours of extra duty. Johnson appealed the decision but his appeal was denied.  On both March 28, and April 26, 2007, Johnson requested that NCF provide a legal assistant to assist him with filing his legal documents. Thyng and Major Dennis Cox, an NCF official, denied Johnson's requests.

Johnson's suspension ended on May 21, 2007, and he returned to the library on May 23, 2007 to have photocopies made for him by Poulin.  Poulin asked Johnson to sit down while she was copying the documents, but Johnson refused.  Poulin consulted prison official Corporal Shane Mailhot, who ordered Johnson to sit down.  Johnson again refused.  Poulin filed a disciplinary report, and Thyng suspended Johnson from the law library for ninety days.

A disciplinary hearing was held on May 30, 2007 and Johnson was found guilty of failing to obey orders and engaging in disruptive conduct.  He was sentenced to ten days of punitive segregation and a ninety-day suspension, twenty-five hours of extra duty, twenty-five days of loss of recreational library access, and twenty-five days loss of recreation time.  Johnson

-4-

was permitted to return to the library on July 31, 2007, and he has been permitted access since that date.

During both periods of suspension from the law library, Johnson was able to access law library materials by filling out inmate request slips with the names of cases or with instructions for legal research to be carried out on his behalf.  Johnson utilized this process to research the Confrontation Clause, as well as cases relevant to the civil rights claims presented in this case.

B.    **Child Pornography Rumors, Safety Concerns, and Assault**

On March 29, 2007, Joseph Bachofer, Johnson's work supervisor on the prison maintenance crew, fired Johnson from his job of three years.  Johnson alleges that Bachofer fired him because of a rumor at the prison that Johnson had been disciplined for using other inmates' identities to look for child pornography in the law library.  Bachofer says that he fired Johnson for two main reasons:  first, because of Johnson's poor work performance beginning in late January 2007, and second, because Johnson failed to show up for work from February 28, 2007 to March 16, 2007 due to a medical "no work" pass, about which Johnson had failed to notify Bachofer.

-5-

On May 22, 2007, Johnson complained to Sergeant John Masse
that Bachofer was spreading a rumor that Johnson was fired for
looking at child pornography in the law library.  Johnson also
submitted a written statement from inmate Kerry Kidd in which
Kidd stated that Bachofer told him that Johnson was fired because
he got caught trying to look up child pornography in the law
library.

Bachofer admits that he had a conversation with Kidd and
says that Kidd asked him whether Johnson was fired for looking up
"stuff" in the library.  Bachofer told Kidd that Johnson was
terminated for poor work performance, disciplinary infractions,
and failure to notify him of the disciplinary infractions.
Bachofer says Kidd then asked whether Johnson was looking up
"kiddy porn," and Bachofer responded "no" and stated that the
discipline related to the research of "inappropriate material."
Bachofer states that one other inmate, Gary York, may have
overheard the conversation.

On May 31, 2007, Johnson submitted a grievance to the
Warden, Larry Blaisdell, stating that, while he felt safe on his
cell block, he did not feel safe outside or in the chow hall,
especially in the hallway during chow times.  The Warden

-6-

responded on June 13, 2007 stating that he was concerned for Johnson's safety and asking Johnson what steps he wanted the prison to take to keep him safe.

On June 5, 2007, Johnson met with Thyng regarding his safety concerns.  Thyng says that he explained the protective custody policy to Johnson, stating that Johnson would need to name the specific threats and individuals that were threatening him, and that Thyng would need to handcuff Johnson and escort him to a holding cell until a protective custody board hearing could be conducted.  Thyng states that Johnson then said that he felt safe on his block.  Johnson signed a statement saying that he wished to remain on his block and did not wish to seek protective custody.

On June 8, 2007, Johnson submitted an inmate request form to the Warden stating that when he told Thyng that he felt his life was in danger, Thyng made him sign a paper saying that he didn't want protective custody, and that "if I didn't he would have Lt. Loven cuff me and throw me in the tank a few days and I would probably lose my belongings."  Johnson then stated in his request:  "I'm telling you Warden, I want to be on PC [protective custody], and I still feel harm could come to me."  The Warden

-7-

responded on June 13, 2007, asking Johnson to specify what he
wanted, and clarifying that if Johnson wanted protective custody,
it could be done if the criteria were met.

After Johnson made his complaints to Blaisdell but before
Blaisdell responded, Johnson was assaulted by another inmate,
Carl Bickham, at the chow hall on June 11, 2007.  Incident
reports regarding the assault indicate that Johnson reported to
prison officials that the dispute related to a seat in the chow
hall.  Johnson now alleges, however, that the dispute related to
the child pornography rumor.  Johnson says that he first
encountered Bickham in the chow hall on June 10, 2007, when
Bickham said to him "I hear you like little kids bitch, don't be
sitting at this table tomorrow."

Johnson alleges that this scared him and that he immediately
requested cell feeds from the officer in charge.  According to
Johnson, the officer in charge called Sergeant Morin, who denied
Johnson's request.  When Johnson went to the chow hall on June
11th, he tried to eat quickly and leave before Bickham's block
was called to the chow hall, but Bickham's block was called
earlier than usual.  Bickham assaulted Johnson when Johnson was
returning his tray and Bickham was in line for food.  As a result

of the assault, Johnson suffered a serious injury to his eye
resulting in loss of vision and requiring multiple surgeries.

**C.**   **Hygiene Items**

Beginning in late June 2007 and continuing throughout the
summer of 2007, Johnson had no money in his inmate account and,
as an indigent prisoner, he requested prison officials to provide
him with hygiene items.  Johnson alleges that the prison
officials were not responsive to his requests and provided him
with an inadequate supply of items.  At the preliminary
injunction hearing held on October 4, 2007, Thyng testified that
he provided Johnson with hygiene items "whenever he needed them
and we could verify that he was out of his materials."

Johnson alleges that Thyng denied his requests, such that,
at one point, he was without hygiene items such as soap and
razors for sixteen days.  Johnson alleges that because he did not
have soap, he developed a rash between his thighs and sores on
his body, and that, because he did not have razors, he was
disciplined for having a beard.  Johnson admits that he received
hygiene items periodically from prison officials, but that the
items were not sufficient to meet his needs.

D.   **Mental Health Treatment**

Johnson received treatment from mental health professionals throughout his incarceration at NCF. On July 16, 2007, Judy Figueroa, a mental health professional at NCF, prescribed cell feeds for Johnson.  When Thyng learned that Johnson had received a cell feed pass, he contacted Heidi Guinen, the Senior Psychiatric Social Worker at NCF, to determine whether Johnson obtained the pass for mental health reasons.  Guinen discovered that Figueroa, a new mental health worker, had prescribed the cell feed pass based on security reasons rather than mental health reasons.  Johnson's cell feed pass was then terminated, and Thyng filed a disciplinary report against Johnson, stating that Johnson had manipulated the system by going to the mental health department to obtain a cell feed pass for security reasons.  A disciplinary hearing was held on the charges and Johnson was not disciplined for this conduct.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  A party seeking summary judgment must first identify the
absence of a genuine issue of material fact. Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the
nonmoving party to "produce evidence on which a reasonable finder
of fact, under the appropriate proof burden, could base a verdict
for it; if that party cannot produce such evidence, the motion
must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95
F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  ANALYSIS

Johnson brings the following claims:  (1) denial of right of
access to the courts claim against Thyng, Blaisdell, Poulin,
Mailhot, Wrenn, Kench, and Wilson for disallowing Johnson's
research of inappropriate phrases; (2) due process violation
claim against Thyng for banning Johnson from the NCF law library;
(3) denial of right of access to the courts claim against Thyng,
Blaisdell, and Cox for denying Johnson access to legal research
materials or a legal assistant proficient in the law; (4) Eighth

-11-

Amendment endangerment claim against Bachofer; (5) Eighth

Amendment failure to protect claim against Thyng; (6) Eighth

Amendment and ADA claims against Thyng and Blaisdell for denial

of adequate mental health care; (7) Eighth Amendment claim

against Thyng and Blaisdell for denial of personal hygiene items;

and (8) state law defamation claim against Bachofer.[4]

## A.   __Right of Access to the Courts and Due Process Claims__

In Bounds v. Smith, 430 U.S. 817 (1977), the U.S. Supreme

Court recognized that prisoners' constitutional right of access

to the courts requires prisons "to assist inmates in the

preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from

persons trained in the law."  Bounds, 430 U.S. at 828.  In both

Bounds and Lewis v. Casey, 518 U.S. 343 (1996), the Court

confirmed that no particular methodology for accommodating this

right is constitutionally required.  Lewis, 518 U.S. at 356;

Bounds, 430 U.S. at 830.  All that is required is that prisoners

be provided the tools needed to bring direct and collateral

---

[4] Johnson's other claims were dismissed when I adopted the
Magistrate Judge's Report and Recommendations dated September 12,
2007.  See Order, Johnson v. Poulin, Case No. 07-cv-161-PB, Dec.
10, 2007 (Doc. No. 52).

attacks to their sentences and challenges to the conditions of their confinement.  Lewis, 518 U.S. at 355.  The Constitution requires only that prisoners "be able to present their grievances to the courts," not that they be able to conduct generalized research.  Id. at 360.

The Court also confirmed in Lewis that in order to allege a constitutional violation, the prisoner must show that denial of his right of access to the courts resulted in actual injury.  Id. at 349.  Because there is no right to a law library or legal assistance in the abstract, the prisoner must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  Id. at 351.

1.   **Right of Access to Legal Materials**

Johnson has failed to demonstrate that he suffered an actual injury from his alleged denial of access to legal research materials.  First, Johnson argues that he did not fully understand the implications of filing for summary judgment (i.e., that the case could be decided without a trial) because he was not allowed time in the library or help from a legal assistant. As the defendants have assented to withdrawal of Johnson's

-13-

motion, however, his lack of knowledge did not result in actual injury.

Second, Johnson argues that he suffered an actual injury because denial of access to the law library caused him to miss a filing deadline for a motion for reconsideration in Hillsborough Superior Court in April 2007.  Johnson filed a pro se motion for extension of time in which to file for reconsideration, arguing that his ban from the law library prevented him from filing the motion, in which he planned to assert ineffective assistance of counsel claims.  Although the Superior Court denied this motion for extension of time, the court ordered, on January 23, 2007, that Johnson's case be remanded for consideration of Johnson's ineffective assistance of counsel claims as well as other issues that Johnson's previous defense counsel failed to raise. Therefore, Johnson's lack of physical access to the library did not hinder his ability to bring these claims.

Third and finally, Johnson argues that, because he was banned from the library, he was unable to notarize a professional conduct complaint that he wished to submit to the New Hampshire Supreme Court's Attorney Discipline Office within the required time frame.  Johnson has failed to demonstrate that his ban from

-14-

the law library caused him to miss this deadline, as he could have requested notarization services via an inmate request slip. In addition, Johnson was filing a professional misconduct complaint with a state agency, not a legal claim for relief; therefore, his inability to file the claim could not have satisfied the actual injury requirement.  See Lewis, 518 U.S. at 354-55 (holding that the injury requirement is only satisfied by frustrated legal claims that deal with direct or collateral attacks to a sentence or conditions of confinement).

I also note that it is undisputed that, while he was banned from physically coming to the library and utilizing computer research programs himself, Johnson was able to access library resources via inmate request slips.  It is also undisputed that Johnson utilized the request slip process to obtain copies of numerous cases and also to have Lexis searches run on his behalf by law library personnel.  This method of providing access to legal research materials has been upheld as constitutionally sufficient by other courts.  See, e.g., Brooks v. Buscher, 62 F.3d 176, 182 (7th Cir. 1995) (holding that a prison's system of providing photocopies of requested legal materials to a prisoner who was banned from physically visiting the law library was

-15-

constitutionally sufficient).

Because Johnson has failed to demonstrate actual injury arising from his ban from the law library, I grant defendants' motion as to his claim for denial of access to legal research materials or a proficient legal assistant against Thyng, Cox, and Blaisdell.

### 2. <u>Prohibition on Search for Inappropriate Phrases</u>

Johnson argues that disallowing his research of the allegedly inappropriate phrases "licked her anus" and "masturbated a bull" constituted a denial of his right of access to the courts. Again, Johnson has failed to demonstrate that he has suffered an actual injury from the prison's policy against "inappropriate terminology."

Johnson has failed to allege that the prohibition against running searches with the terms described above made him unable to bring claims challenging his conviction or the conditions of his imprisonment. The prison library staff at NCF recognizes that inmates convicted for sex crimes must be permitted to research legal materials that may contain sexual terms or themes. Poulin states in her affidavit that, had Johnson notified her that the search terms were for the purpose of researching the law

-16-

regarding his sexual assault conviction, she would have assisted him with the search or permitted the search.   Poulin Aff. at ¶ 5. In addition, although Johnson was banned from the library for periods of time, he was permitted to request research to be performed for him at the law library via inmate request slips. Just as he utilized this process to research issues with respect to the Confrontation Clause and civil rights matters, he could have used this process to research the New Hampshire rape-shield statute and cases involving penetration by the tongue.

Because Johnson cannot demonstrate actual injury as a result of the NCF prison officials' refusal to allow him to enter these types of search terms, this portion of his claim for denial of his right of access to the courts fails as a matter of law.

### 3.   **Due Process Claim**

Johnson argues that Thyng violated his constitutional right to due process of law when Thyng banned him from the law and recreational libraries prior to a disciplinary hearing and when Thyng extended the ban for two months without conducting a due process hearing.   It is undisputed that Johnson's ban from the library was imposed by Thyng, not as part of his sentence resulting from the disciplinary hearings.   Thyng argues that he

-17-

banned Johnson for security reasons.

"[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin v. Conner, 515 U.S. 472, 478 (1995) (citing Meachum v. Fano, 427 U.S. 215, 224 (1976)). A due process liberty interest is only implicated when the state imposes a sanction that is atypical and constitutes a significant hardship in relation to the normal incidents of prison life. Id. at 484; DeWitt v. Wall, 121 Fed. Appx. 398, 399 (1st Cir. 2004) (unpublished opinion).

In this case, the ban on Johnson's physical presence from the law library did not constitute an atypical sanction imposing a significant hardship. Prisoners cannot come to the NCF law library at will; they must follow prison policies regarding hourly limitations and requests for access. As the Court recognized in Lewis, prisoners have no freestanding constitutional right of access to law libraries or legal assistants trained in the law, see Lewis, 518 U.S. at 351, and no New Hampshire statute or regulation requires access for prisoners to prison law libraries or legal assistants trained in the law. In this case, Johnson remained able to access legal materials and

-18-

to have research conducted on his behalf, despite the fact that
he was unable to physically go to the library.  Therefore,
Thyng's suspension of Johnson from the library for 30 and then 90
days did not constitute a deprivation of a liberty interest
requiring due process of law.

**B.    Endangerment, Defamation, and Failure to Protect Claims**

The Eighth Amendment imposes a duty on prison officials to
protect inmates from violence at the hands of other prisoners.
Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citing Cortes-
Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.
1988)).  This duty does not require prison officials to prevent
every altercation between prisoners; it requires only that the
prison official not be "deliberately indifferent to the risk to
prisoners of violence at the hands of other prisoners."  Burrell
v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).

The "deliberate indifference" standard has two components.
First, the deprivation alleged by the prisoner "must be,
objectively, sufficiently serious."  Farmer, 511 U.S. at 834
(internal quotation omitted).  Second, the prison official must
have a culpable state of mind; he must subjectively be aware of a
substantial risk of serious harm, and he must fail to take

-19-

reasonable measures to avert the potential harm.  Burrell, 307
F.3d at 8; see also Farmer, 511 U.S. at 834-35.

    **1.**    **Endangerment and Defamation Claims against Bachofer**

In this case, Johnson argues that Bachofer endangered his
safety by spreading a rumor that Johnson was looking up child
pornography on a law library computer.  Bachofer denies that he
spread this rumor.  Johnson has failed to proffer admissible
evidence from which a reasonable fact-finder could conclude that
Bachofer started a rumor that Johnson looked up child pornography
in the law library.[5]

Bachofer admits that he told Kidd that Johnson was
disciplined for research of "inappropriate material."  Based on
the evidence presented, however, a reasonable fact-finder could
not conclude that Bachofer acted with deliberate indifference to

---

[5] Johnson has submitted fellow inmate Kidd's unsworn written
statement, which was later retracted by Kidd.  He has also
submitted an affidavit from inmate Christopher Creameans, where
Creameans reported that he heard Kidd say that Bachofer told the
work crew that Johnson was fired for looking up child
pornography.  Because Johnson offers Creameans's statement as
proof that Bachofer made such statements to Kidd, it is
inadmissible hearsay.  Johnson also submits an unsworn written
statement from inmate Robert Rabe, where Rabe states that
Johnson's ex-boss spread rumors about Johnson.  The statement
does not name Bachofer and does not establish that Rabe had
personal knowledge that Bachofer said anything about Johnson.

Johnson's health and safety when he made this statement.  Johnson has not presented evidence to show that Bachofer was subjectively aware that his statement would create a substantial risk of serious harm to Johnson.  Bachofer made the statement in response to Kidd's question about child pornography in an attempt to dispel the rumor regarding child pornography, and there is no evidence to suggest that he made the statement for any other reason or that he knew that his statement would create a substantial risk of harm to Johnson.

For the same reason, because Johnson cannot demonstrate evidence that Bachofer "published a false and defamatory statement of fact" about him to a third party, Johnson's state law defamation claim against Bachofer fails as a matter of law. See Thomas v. Tel. Publ'g Co., 155 N.H. 314, 321 (2007).

## 2.   **Failure to Protect Claim against Thyng**

Johnson also claims that Thyng intentionally failed to protect Johnson from a known risk to his safety.  As discussed above, Johnson made numerous attempts to communicate his safety concerns to prison officials in late May and early June 2007, prior to the assault on June 11, 2007.  Viewing the facts in the light most favorable to Johnson, a reasonable fact-finder could

conclude that Thyng acted with deliberate indifference to Johnson's health and safety needs because, if Johnson's version of events is to be believed, Thyng pressured Johnson into making a written statement that he felt safe on his block and did not want protective custody, despite the fact that Johnson approached Thyng to request protective custody.  Johnson's version of events is supported by the fact that he submitted a statement to the Warden on June 8th, three days prior to the assault, stating that he wanted to seek protective custody and that Thyng prevented him from asserting his request at their June 5th meeting.

Because there are genuine issues of material fact with respect to this claim, I deny defendants' motion for summary judgment as to this claim.

## C.  **Denial of Hygiene Items Claim**

The Eighth Amendment requires that prison officials provide humane conditions of confinement.  Farmer, 511 U.S. at 832. Prisoners must be provided with "the minimal civilized measure of life's necessities."  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  Deprivation of basic personal hygiene items can constitute a violation of the Eighth Amendment.  See, e.g., Gillis v. Litscher, 468 F.3d 488, 492 (7th Cir. 2006);

Palmer v. Johnson, 193 F.3d 346, 354 (5th Cir. 1999).

Johnson alleges that as of July 6, 2007, when he submitted
his allegation as an amendment to the complaint, he had been
without toothpaste, soap, shampoo, and razors for ten days.  At
the preliminary injunction hearing before Magistrate Judge
Muirhead on October 4, 2007, Johnson alleged that, at one time,
he had been without hygiene items for sixteen days.  Johnson also
alleges that, due to this deprivation, he developed sores and a
rash from lack of soap, and was cited for a disciplinary
violation for failure to shave.[6]  Defendants Thyng and Blaisdell
argue that they provided Johnson with adequate hygiene materials.
Defendants argue that, even if Johnson were deprived of hygiene
items for sixteen days, the deprivation did not violate the
Eighth Amendment because it did not constitute a reckless
disregard of a substantial risk of harm.

Viewing the facts in the light most favorable to Johnson,
a reasonable fact finder could not conclude that the defendants

---

[6]Johnson also submits unsworn written statements from fellow
inmates Armand Desmarais and Kenneth Morand, who both state that
they witnessed the fact that the prison did not provide adequate
hygiene items to Johnson and that Johnson's appearance
deteriorated.

acted "with deliberate indifference to a substantial risk of serious harm."  See Farmer, 511 U.S. 836.  An alleged deprivation must be "sufficiently serious" to constitute a violation of the Eighth Amendment.  Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  In this case, the alleged denial of hygiene items was temporary and prison officials were not completely unresponsive to Johnson's requests.  Johnson admits that he periodically received hygiene items, although not in the quantities he desired.  Although Johnson has alleged that the lack of soap caused him to have a rash and sores on his body, he has not presented evidence to substantiate the claim or to show that this constituted serious harm.  Therefore, the alleged deprivation of hygiene items did not constitute cruel and unusual punishment.  Accordingly, I grant defendants' motion with respect to this claim.

**D.   Denial of Adequate Mental Health Care Claims**

Johnson brings claims under the Eighth Amendment and the ADA against Thyng and Blaisdell for failure to provide him with cell feeds after cell feeds were prescribed by mental health professionals.

To state a cognizable Eighth Amendment claim based on medical mistreatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007). In this case, the mental health professional who prescribed the cell feed for Johnson confirmed that the cell feed was prescribed for safety reasons, not for medical reasons. Therefore, revoking Johnson's cell feeds did not give rise to an Eighth Amendment violation because he did not have a medical need for the cell feeds.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Johnson alleges that because of his mental illness, he is a qualified individual with a disability, and that cell feeds are a reasonable means of accommodating his mental health needs. As discussed above, however, Johnson's mental heath provider did not prescribe cell feeds for mental health reasons, but for safety

reasons.  Johnson has failed to demonstrate that he has mental
health needs warranting cell feeds; therefore, his ADA claim
fails as a matter of law.

## IV.  **CONCLUSION**

For the reasons stated above, I grant in part and deny in
part defendant's motion for summary judgment (Doc. No. 62).
Plaintiff's motion for summary judgment (Doc. No. 56) is
withdrawn by agreement of the parties, *supra* note 2, at 1-2.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

April 24, 2008

cc:  Gary Dewayne Johnson, pro se
     Danielle Leah Pacik, Esq.

-26-